90 So.2d 743

**STATE of Alabama**

v.

**BAY TOWING & DREDGING COMPANY, Inc.**

I Div. 595.

Supreme Court of Alabama.

Nov. 15, 1956.

John Patterson, Atty. Gen., and H. Grady Tiller and Willard W. Livingston, Asst. Attys. Gen., for appellant.

Vickers & Thornton, Mobile, for appellee.

GOODWYN, Justice.

In August, 1953, the State Department of Revenue made a final assessment of use tax on equipment purchased outside the state by the Bay Towing & Dredging Company, Inc. (hereafter referred to as Bay Company), appellee, during the period January 1, 1951, through March 31, 1953. Bay Company appealed the assessment to the Circuit Court of Mobile County where the case was submitted on Bay Company's bill of complaint, the state's answer thereto, and an agreed statement of facts.

In substance, the facts agreed upon are as follows: Bay Company is a Mobile concern engaged in recovering deposits of dead oyster shells from the bottom of Mobile Bay. The shells are brought to the surface by a floating dredge, where they are loaded on barges and towed to shore by tugs. These shells have a variety of commercial uses.

From time to time Bay Company found it necessary to acquire additional equipment to carry on its operations, and during the period covered by the assessment it made several purchases of tugs and barges outside the state which were later used within the state. Included were ten used barges purchased from a Louisiana corporation which was engaged in the business of hauling freight by barge. The seller was not a regular dealer in barges, and had sold only barges which had been used in its regular hauling business.

Five additional barges were purchased from two Texas corporations, both regularly engaged in hauling oil by barge. These concerns also had made only incidental sales of barges used in their regular hauling business.

Bay Company also purchased two new tugs, the "Kittiwake" and the "Willet", from a Louisiana shipyard regularly engaged in building and selling tugs. It also purchased the used tug "Ace" from a Louisiana concern regularly engaged in buying and selling tugs.

The department of revenue made an assessment of use tax on all the barges and tugs, plus penalties and interest.

The circuit court rendered a decree holding Bay Company not liable for use tax on any of the barges, but approving the assessment on the three tugs. The state prosecutes this appeal to review that ruling with respect to the tax on the barges. Bay Company cross-appeals to test the court's ruling with respect to the used tug "Ace".

There is no contest here of the assessment on the two new tugs "Kittiwake" and "Willet".

The first question presented is whether barges acquired in "casual" and "isolated" sales transactions outside Alabama and subsequently brought into the state for permanent use are subject to the use tax. The answer to the question depends upon the construction given the statutes imposing the sales tax, Code 1940, Tit. 51, § 752 et seq. as amended, and the use tax, Code 1940, Tit. 51, § 787 et seq. as amended.

The levying section of the sales tax law, § 753, Tit. 51, as amended, provides as follows:

"There is hereby levied, in addition to all other taxes of every kind now imposed by law, and shall be collected as herein provided, a privilege or license tax against the person on account of the *business activities* and in the amount to be determined by the application of rates against gross sales, or gross receipts, as the case may be, as follows: (a) Upon every person, firm or corporation engaged, or continuing within this state, in *business* of selling at retail any tangible personal property whatsoever, * * *" [Emphasis supplied.]

Section 752, subdiv. (1) (k), Tit. 51, as amended, defines "business" as follows:

"(k) The word 'business' as used in this article, shall include all activities engaged in, or caused to be engaged in, with the object of gain, profit, benefit or advantage, either direct or indirect, and not excepting sub-activities producing marketable commodities used or consumed in the main business activity, each of which sub-activities shall be considered business engaged in, taxable in the class in which it falls."

The levying section of the use tax law, § 788, Tit. 51, as amended, provides as follows:

"(a) An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased at retail on or after the first of March, 1939, for storage, use or other consumption in this state * * * regardless of whether the retailer is or is not engaged in the business in this state, except as provided in subsection (b) of this section. (b) An excise tax is hereby imposed on the storage, use, or other consumption in this state of any new or used automotive vehicle, truck trailer or semi-trailer purchased at retail on or after the effective date of this article for storage, use or other consumption in this state at the rate of one percent of the sales price of such automotive vehicle, truck trailer or semi-trailer. Every person storing, using or otherwise consuming in this state tangible personal property purchased at retail shall be liable for the tax imposed by this article, and the liability shall not be extinguished until the tax has been paid to this state; provided, however, that a receipt from a retailer maintaining a place of business in this state or a retailer authorized by the department, under such rules and regulations as it may prescribe, to collect the tax imposed hereby and who shall for the purpose of this article be regarded as a retailer maintaining a place of business in this state, given to the purchaser in accordance with the provisions of section 791 of this title, shall be sufficient to relieve the purchaser from further liability for a tax to which such receipt may refer."

The definition of the word "business" as used in the use tax law, § 787, subdiv. (f), Tit. 51, is the same as that contained in the sales tax law, § 752, subdiv. (1) (k), Tit. 51, supra.

The position taken by the state is that § 788, Tit. 51, as amended, supra, requires that the tax be paid on tangible personal property purchased outside the state and brought within the state for storage, use or consumption whether the seller of such

property is engaged in the business of dealing in such property or not; that the wording of Section 788 shows such to be the clear legislative purpose. On the other hand, Bay Company's insistence is that the sales tax and the use tax are complementary, one to the other; that the two laws must be construed together as one integrated, cohesive system of taxation; that unless property would be subject to the sales tax, had the sale occurred within this state, then the use tax cannot apply when the sale occurs without the state; that the property here involved would not be subject to the sales tax had the sale taken place here, and hence is not subject to the use tax. The trial court sustained Bay Company's contention, in which we concur.

While the sales tax is levied on the transaction of sale itself and the use tax on the use of property after the sale is completed, it seems clear that the legislature intended that these two tax laws be considered together as embodying one integrated, cohesive system of taxation. We have held them to be complementary, one to the other, and that the two acts should be construed in pari materia. State v. Advertiser Co., 257 Ala. 423, 59 So.2d 576; Paramount-Richards Theatres v. State, 256 Ala. 515, 55 So.2d 812; State v. Southern Kraft Corp., 243 Ala. 223, 8 So.2d 886; Layne Central Co. v. Curry, 243 Ala. 165, 8 So.2d 839. The purpose and effect of the two laws is thus succinctly stated in Paramount-Richards Theatres v. State, supra [256 Ala. 515, 55 So.2d 820]:

"The measure of the tax under the Sales Tax Act is the retail sales price of the goods; and under the Use Tax Act the measure of the tax is likewise the retail sales price of the goods.

"The intent and result of this legislation is to impose a sales tax on sales which occur within the state, and a use tax (so called) measured by the retail sale price of goods purchased outside of the state for use within the state.

For these reasons these two acts are referred to as being complementary, one to the other. The Use Tax Act is referred to as a compensatory measure, to equalize the burden of the sales tax and prevent avoidance of the tax by the purchase of goods in interstate commerce or from outside of the state. * * *"

As we see it, if the use tax act is construed as imposing a tax on the use in this state of tangible personal property purchased outside the state in casual and isolated sales transactions, such tax would constitute an unlawful discrimination against interstate commerce, contrary to the Commerce Clause of the United States Constitution, Const. art. 1, § 8, cl. 3, since no similar or equivalent tax burden is imposed in connection with the purchase of such property in casual and isolated sales transactions within the state. This principle was recognized in Paramount-Richards Theatres v. State, supra, where it was said:

"If the legislature had imposed a rental tax only upon property shipped into the state in interstate commerce or purchased outside of the state, it would constitute a direct discrimination against interstate commerce, and such provision would therefore be invalid as being in conflict with the interstate commerce clause in the Constitution of the United States, art. 1, § 8, cl. 3. * * *"

The United States Supreme Court has held that a use tax, integrated with a sales tax, in a manner similar to ours, is not violative of the Commerce Clause when such system of taxation does not discriminate against transactions in interstate commerce, but merely equalizes the burden of taxation on purchases made in interstate commerce and on strictly local sales. Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814. Cf. Annotation, 129 A.L.R. 222; Annotation, 153 A.L.R. 609; Note, 54 Colum.L.Rev. 261.

However, if such a system of taxation places a discriminatory burden on transactions in interstate commerce, which would not apply to local sales, the use tax would become unconstitutional in its operation. Paramount-Richards Theatres v. State, supra; Anderson v. Mullaney, 9 Cir., 191 F.2d 123, 129, affirmed 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458; Best & Co. v. Maxwell, 311 U.S. 454, 455, 61 S.Ct. 334, 85 L.Ed. 275; Hale v. Bimco Trading Co., 306 U.S. 375, 59 S.Ct. 526, 83 L.Ed. 771. As said in Best & Co. v. Maxwell, supra [311 U.S. 454, 61 S.Ct. 335]:

"The commerce clause forbids discrimination, whether forthright or ingenious. In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce. * * *"

It seems clear to us that if the sales of the barges had taken place in Alabama there would be no sales tax due because the barges were purchased in "casual" or "isolated" sales transactions from concerns not engaged in the business of selling barges but engaged solely in the business of hauling for hire. Therefore, if the use tax act should be construed as imposing the tax on "casual" and "isolated" sales in interstate commerce there would result a clear discrimination against such sales.

Since its original enactment in 1937, Gen. & Loc.Acts, Ex.Sess.1936–37, p. 125, Act. No. 126, appvd. Feb. 23, 1937, the sales tax law has been consistently construed by the attorney-general to mean that casual or isolated sales of tangible personal property by persons not engaged in the business of selling such property are not subject to the sales tax.

In an opinion rendered on May 12, 1937, construing Section 2 of the original sales tax act which contained the same provisions as those quoted from section 753, as amended, supra, it was held that an occasional sale made by one as an individual,

and not as a retail business transaction, was not subject to the sales tax. Vol. 7, Rep. of Op., Atty. Gen. Ala., Apr. 1, 1937—June 30, 1937, p. 126.

On March 25, 1940, the attorney-general again made a similar ruling in construing Section II of the 1939 Sales Tax Act, Act No. 18, appvd. Feb. 8, 1939, Gen. Acts 1939, p. 16, which also contained the same provisions as those quoted, supra, from Section 753, as amended. Vol. 21 Rep. of Op., Atty. Gen. Ala., Oct. 1, 1940—Dec. 31, 1940, p. 177. The question responded to was whether the sales tax should be collected upon a sale made under the following circumstances:

"A company purchased a used piece of machinery and a used motor to drive it, retained such machinery and motor in its plant for a period of about 60 days and then sold such machinery and motor to a third party who installed it in a manufacturing plant and which machinery is now in daily use."

The ruling was as follows:

"You do not state in your statement of facts whether the sale of the machinery named constitutes a part of the regular business of the seller or whether it was such sale as must necessarily be classified as an 'occasional sale.'

"It suffices to say, however, if such sale is properly classified as an 'occasional sale', it is my opinion that no sales tax can or does become due as a result of the transaction.

"If, on the other hand, the sale involves goods which are a part of the stock or if such sale is in the regular course of the business of the seller, it must become subject to the tax unless a specific exception is found in the law."

Also bearing on the question are Revenue Department Rules C1–031 (issued in Janu-

**288**

ary, 1951) and C1–032 (issued in February, 1951) which provide as follows:

> "Rule C1–031. Casual Sales.—Casual or isolated sales by persons not engaged in the business of selling are not subject to the sales tax.

> "There are no casual or isolated sales insofar as the use tax is concerned."

> "Rule C1–032. Sale, Occasional.— Property acquired for use or consumption may be sold tax free at a private sale completely disassociated from any retail business which may be operated by the seller."

■ What these rules mean is not too clear. Nor does the record disclose exactly how they have been interpreted and applied by the revenue department. Be that as it may, we think the attorney general's construction of the sales tax act is in accord with the legislative intent. Thus, in the instant case if Bay Company had bought the barges in Alabama there would be no sales tax due. Accordingly, if the use tax act should be construed as imposing a tax there would be, as a result, a clear discrimination against Bay Company's interstate sales transactions.

> "It is a cardinal, or the basic, rule of construction that, when reasonably possible or practicable, a statute * * must, or will, be so construed as to uphold its constitutionality or validity, and not so construed as to endanger its validity, either in whole or in part; and this is true even though the interpretation of the statute involves most difficult questions, and even though its constitutionality has not been questioned. The duty of the court, to this end, is to construe the statute, if possible, so as to effectuate the will, intent, object, purpose, or policy of the legislature, as expressed in the statute; and statutes will, or should, be liberally or reasonably construed so as to sustain their constitutionality or validity;

* * *." 16 C.J.S., Constitutional Law, § 98, p. 359.

See, also, 11 Am.Jur., Constitutional Law, § 97, pp. 725–732.

■ The rule is thus stated in McCall v. Automatic Voting Mach. Corporation, 236 Ala. 10, 13, 180 So. 695, 697:

> "We are, of course, aware of the elementary principle that, where the validity of a statute is assailed, and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other it would be valid, the court should adopt the construction which would ·uphold it. When the constitutionality of a statute is questioned, it is the duty of the courts to adopt a construction that will bring it in harmony with the Constitution, if its language will permit, even though the construction which is adopted does not appear to be as natural as the other. State ex rel. Collman v. Pitts, Probate Judge, 160 Ala. 133, 49 So. 441, 686, 135 Am.St. Rep. 79. * * *"

■ The trial court correctly ruled that Bay Company is not liable for use tax on the barges.

### Used Tug, "Ace"

Liability for use tax on this tug turns on whether there has been an implied repeal of a provision in § 789, Tit. 51, as amended, which specifically exempts "used automotive vehicles" from the operation of the use tax. It is conceded that this tug is an "automotive vehicle".

The levying section of the use tax act, § 788, Tit. 51, supra, prior to its amendment in 1951, Act No. 209, appvd. July 17, 1951, effective Oct. 1, 1951, Acts 1951, p. 472, contained the following provision:

> "(b) An excise tax is hereby imposed on the storage, use or other consumption in this state of any automotive vehicle purchased at retail * * *."

Section 789, Tit. 51, supra, as amended in 1949, Act No. 210, appvd. July 12, 1949, Acts 1949, p. 300, specifically exempted "(u) used automotive vehicles" from the operation of the use tax. This section, as so amended, still stands.

In 1951, however, the levying provision of § 788, set out above, was amended, Act No. 209, supra, to read:

"(b) An excise tax is hereby imposed on the storage, use, or other consumption in this state of any *new or used* automotive vehicle, *truck trailer or semi-trailer* purchased at retail * * *." (Italicized words were added by the 1951 amendment.)

■ In Alabama, the law governing implied repeals is well-settled and the cases on this point are singularly consistent. See 18 Ala.Dig., Statutes, ⬡159 & 160. A concise statement of the rule is contained in City of Birmingham v. Southern Express Co., 164 Ala. 529, 538, 51 So. 159, 162:

"Repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former. * * *"

■ Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes. Ex parte Jones, 212 Ala. 259, 260, 102 So. 234. When the provisions of two statutes are directly repugnant and cannot be reconciled, it must be presumed that the legislature intended an implied repeal, and the later statute prevails as the last expression of the legislative will. Union Central Life Insurance Co. v. State, 226 Ala. 420, 423, 147 So. 187; Fidelity & Deposit Co. of Maryland v. Farmers' Hardware Co., 223 Ala. 477, 479, 136 So. 824.

■ Before the 1951 amendment, the use tax was levied on "any automotive vehicle", subject to the specific exemption of "used automotive vehicles" contained in another section. The amendment changed the wording of the levying section to read "any new or used automotive vehicle". It is pointed out by cross-appellant that "any automotive vehicle" was already a comprehensive phrase including all types. However, the insertion of the words "new or used" must have had some purpose other than mere redundancy; the legislature must have intended some change in the meaning of the phrase. The only reasonable construction is that the legislature intended that thereafter the use tax should apply specifically to used as well as to new automotive vehicles. [We here note that the 1951 amendment, Act No. 121, appvd. June 22, 1951, effective Oct. 1, 1951, Acts 1951, p. 348, of the sales tax act specifically imposed the sales tax on used automotive vehicles by adding subsection (d) to § 753, Tit. 51, but did not amend § 755, Tit. 51, which granted exemption to used automotive vehicles. It does not appear that the question of implied repeal with respect to the sales tax act has been before this court. See Rule A28–021 of the Department of Revenue, as amended in November 1951, which interprets the sales tax law in effect on October 1, 1951, as imposing the sales tax on used automotive vehicles.]

■ As it is our opinion that the legislative intent as expressed in the 1951 amendment was clearly to extend the operation of the use tax to include used automotive vehicles, we find an implied repeal of subsection (u) of Section 789 which exempts used automotive vehicles from the tax. This exemption is directly repugnant to the 1951 amendment, and the two provisions obviously cannot be reconciled.

Affirmed.

SIMPSON, MERRILL and SPANN, JJ., concur.