I dissent. Blue Cross and Blue Shield of Alabama ("BCBS") argues that in order for nonstock corporations organized pursuant to Article 6 of Chapter 4 of Title 10 of the Alabama Code of 1975 ("Title 10 insurers") to be subject to insurance statutes, the Legislature must expressly amend § 10-4-115 to so state. BCBS also points out that this requirement is repeated in Title 27 of the Alabama Code, which has its own exemption statute. See §27-1-4(2), Ala. Code 1975, providing:
"This title [Title 27] shall not apply as to:
". . . .
 "(2) Nonprofit corporations for establishment of hospitalization plan [sic] under Section 10-4-100 et seq., except to the extent now or hereafter provided in such laws. . . ."
BCBS argues that because when it enacted the Physician Assistant Act the Legislature did not expressly amend §§ 10-4-115 or27-1-4(2), Ala. Code 1975, to state that Title 10 insurers are subject to the Physician Assistant Act, that Act is not applicable to BCBS, regardless of the specific language included in the Act.
BCBS relies upon Blue Cross Blue Shield of Alabama v.Nielsen, 714 So.2d 293 (Ala. 1998) ("Nielsen III"), as controlling authority. I agree that Nielsen III is controlling. In Nielsen III, this Court addressed a situation almost identical to the one presented here. Nielsen III was a certified question presented to this Court in a case originally filed in the federal district court. In that case, Blue Cross Blue Shield of Alabama v. Nielsen, 917 F.Supp. 1532 (N.D.Ala. 1996) ("Nielsen I"), BCBS challenged three insurance statutes as inapplicable to it because of the exemption statutes. The statutes at issue in Nielsen III — § 27-1-19 (the Assignment Act); §§ 27-19A-1 to -11 (the Dental Act); and §§ 27-45-1 to -9 (the Pharmacy Act) — provided that they applied to all "nonprofit health service organizations," which included BCBS.[4]
However, the federal district court held that they were not applicable to BCBS and any other Title 10 insurers because §10-4-115 had not been expressly amended to reference the Assignment Act, the Dental Act, and the Pharmacy Act. *Page 963 
The plaintiffs in Nielsen I appealed and, on appeal, the United States Court of Appeals for the Eleventh Circuit (seeBlue Cross Blue Shield v. Nielsen, 142 F.3d 1375 (11th Cir. 1998) ("Nielsen II") certified questions of state law to the Alabama Supreme Court. The Alabama Supreme Court responded to the first certified question:
 "Based upon our reading of these two Code provisions [§ 10-4-115 and § 27-1-4], and applying the principles of statutory construction heretofore adopted by this Court, we conclude that the language of § 10-4-115 plainly and unambiguously states that corporations formed under § 10-4-110 et seq., as [BCBS] was, are not regulated by the insurance laws of this State unless § 10-4-110 et seq. are expressly amended to apply such laws. This interpretation is also supported by the wording of § 27-1-4, which expressly states that laws appearing in the Alabama Insurance Code (Title 27) do not apply to companies, like [BCBS], that are organized under the provisions of § 10-4-100, unless § 10-4-100 et seq. expressly provide that such laws apply.
 "It is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law. Applying that principle to this case, we can presume that if the Legislature had intended for § 27-1-19
and §§ 27-19A-1 to -11, and §§ 27-45-1 to -9 to apply to companies like [BCBS], it could have eliminated any question by expressly amending § 10-4-100 et seq. to specify that those statutes would, in fact, apply. Based on the foregoing, we conclude that [BCBS] is exempted from the [Assignment Act, the Dental Act, and the Pharmacy Act] by the provisions of § 10-4-115
and § 27-1-4. The Court of Appeals' first question is answered in the affirmative."
Nielsen III, 714 So.2d at 296-97 (citations omitted). The Alabama Supreme Court in Nielsen III went on to reject the argument presented in this case by the providers that the amendment requirement of § 10-4-115, Ala. Code, imposed an unconstitutional requirement on the Legislature relating to the enactment of legislation.[5]
Nielsen III is applicable, and it controls this case. As we did in that case, we must presume that the Legislature knew the law when it enacted the Physician Assistant Act in 1997. Therefore, we must presume that the Legislature was aware of the exemptions created by §§ 10-4-115 and 27-1-4, Ala. Code 1975, when it enacted the Physician Assistant Act. We also presume that the Legislature was aware of the steps specified by those statutes that could be taken to defeat the exemptions offered by those statutes and to make the Physician Assistant Act applicable to Title 10 insurers. If the Legislature had intended for § 27-51-1
to apply to Title 10 insurers, it could have easily eliminated any question by expressly amending § 10-4-115 to specify that the Physician Assistant Act would, in fact, apply. See Nielsen III, supra. It did not do so. Alternatively, if the Legislature was unhappy with the exemptions provided by § 10-4-115 and §27-1-4(2), Ala. Code, and intended to repeal the exemptions previously granted to Title 10 insurers, it could have expressly done so.[6] It did not do so. *Page 964 
BCBS also argues that the summary judgment in favor of Dr. Hodurski and the physician assistants cannot be supported on a theory of an implied repeal. I agree. In Shiv-Ram, Inc. v.McCaleb, 892 So.2d 299, 312 (Ala. 2003), this Court recited the long-standing principles applicable to repeal by implication:
 "This Court stated in Fletcher [v. Tuscaloosa Fed. Sav. Loan Ass'n, 294 Ala. 173, 176-77, 314 So.2d 51 (1975)]:
 "`Repeal by implication is admittedly not a favored rule of statutory construction, but in State v. Bay Towing and Dredging Company, 265 Ala. 282, 289, 90 So.2d 743, 749 (1956), we find:
 "`"In Alabama, the law governing implied repeals is well-settled and the cases on this point are singularly consistent. . . .:
 "`"`Repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former. . . .'
 "`"Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes. When the provisions of two statutes are directly repugnant and cannot be reconciled, it must be presumed that the legislature intended an implied repeal, and the later statute prevails as the last expression of the legislative will."'"
(Citations omitted.) See also Brown v. Board of Educ. ofMontgomery County, 863 So.2d 73, 81 (Ala. 2003) ("`"The implied repeal of a statute by another statute is not favored by the courts and will be found only when the two statutes are so repugnant to, or in such conflict with, one another that it is obvious that the Legislature intended to repeal the first statute."'" (quoting Cook v. Lloyd Noland Found., Inc.,825 So.2d 83, 88 (Ala. 2001))).
In this case, the exemption statutes are the earlier enacted statutes. The Physician Assistant Act is the subsequently enacted statute. After reviewing the express language of the Physician Assistant Act, I am convinced that the Physician Assistant Act continues to have a field of operation (although admittedly a small one), even after Title 10 insurers are exempted from the reach of that Act. Second, even after the Physician Assistant Act was enacted and codified, three subsequently convened legislatures amended § 10-4-115 to reflect that Title 10 insurers were subject to other insurance statutes. See § 10-4-115, Ala. Code 1975, amended in 2000 (Act No. 2000-595 and Act No.2000-797, Ala. Acts 2000), 2001 (Act No. 2001-445, Act No.2001-447, and Act No. 2001-702, Ala. Acts 2001), and 2002 (Act No. 2002-511, Ala. Acts 2002). Thus, it is apparent that those subsequent legislatures did not consider the exemption provisions found in § 10-4-115 and § 27-1-4 to have been repealed by implication by the Physician Assistant Act of 1997. Therefore, the Physician Assistant Act and the exemption statutes are not so repugnant to each other that it is obvious to me that the Legislature intended to repeal the exemption statutes.[7] *Page 965 
I also disagree with the trial court's conclusion that because § 27-51-1 was the more specific statute, § 27-51-1 must prevail over § 10-4-115 as the "last expression of legislative will." (Order of the trial court, August 11, 2003.) I do not disagree with the general principle recited by the trial court; however, I disagree with the trial court's application of that principle because I do not believe that the Physician Assistant Act is the more specific statute in this case.
The Physician Assistant Act applies to "an individual or group health maintenance organization, an organized delivery system, a medical service organization created pursuant to Article 6, Chapter 4, Title 10, or a preferred provider organization or arrangement. . . ." The Act requires that all of the listed organizations provide payments for certain services rendered by physician assistants.
In comparison, § 10-4-115 applies exclusively to Title 10 insurers and exempts those Title 10 insurers from the applicability of any insurance statutes unless § 10-4-115 is expressly amended to reference the insurance statute to be made applicable to Title 10 insurers. It would be difficult to find a statute more specific than § 10-4-115. To the extent of any irreconcilable conflict between § 27-51-1 and § 10-4-115, I would conclude that § 10-4-115 is the more specific statute. Thus, the rule of statutory construction relied upon by the trial court in granting Dr. Hodurski and the physician assistants' motion for a summary judgment was improperly applied.
I would conclude that the analysis applied by the Alabama Supreme Court in Nielsen III, supra, is binding and persuasive. It must be presumed that when the Legislature enacted the Physician Assistant Act it knew of the statutory requirements for making that Act applicable to BCBS. For whatever reason, it did not comply with those requirements. This Court cannot presume to know the reasons for that noncompliance, and there is no obvious indication of the Legislature's intent in not complying. The Legislature did not expressly repeal the exemption statutes, and it did not expressly amend § 10-4-115 to make the Physician Assistant Act applicable to BCBS. I would also find no repeal by implication. The language of the Physician Assistant Act alone is insufficient to make it applicable to BCBS.
I also disagree with the third basis of the trial court's summary-judgment order in favor of Dr. Hodurski and the physician assistants. In its order, the trial court stated:
 "Third, and most importantly, no earlier legislature can bind a later legislature to any requirement that its enactments must be in any particular title of the Code in order to be effective. [BCBS] cannot avoid compliance with the P.A. [Physician Assistant] Statute (i.e., the P.A. Statute says it applies to Title 10 [insurers] like [BCBS]) on the theory that the later legislature which enacted the P.A. Statute had to also go back and amend Alabama Code § 10-4-115. To the extent that [BCBS] argues that the legislature was required to amend § 10-4-115, or to do anything more than say straight-out in the P.A. Statute that the statute applies to Title 10 [insurers] — which the legislature certainly did — then [BCBS's] argument runs afoul of the Alabama Constitution. *Page 966 
Under Alabama law it is exceptionally clear that an earlier legislature cannot bind a later legislature, and that a later legislature always has power to overrule an earlier legislature in any and every respect, unless some kind of vested right has intervened (which is not an issue here). Alabama Power v. Citizens of Alabama, 740 So.2d 371 (Ala. 1999) (`No legislature can forestall action by a succeeding legislature.'); John E. Ballenger Construction Company v. State Board of Adjustment, 234 Ala. 377, 175 So. 387 (1937) (`One legislature's action cannot bind another.'); Newton v. State, 375 So.2d 1245 (Ala.Crim.App. 1979) (`One legislature cannot bind a succeeding legislature or restrict or limit the power of its successors to enact legislation.').
 "This is a matter of Alabama constitutional law. The legislative power is vested in the legislature, and each new legislature is a separate session. Ala. Const. §§ 44 and 48. So long as the legislature passes its laws in the form required by the Alabama Constitution (e.g., Ala. Const. § 45), the legislature may pass its laws to amend or replace any title it wishes to amend or replace; and it does not have to do it in Title 10 rather than in Title 27 just because an earlier legislature said so. Whether the legislature in 1997 decided to apply the P.A. Statute to [BCBS] by stating in Title 27 that the P.A. Statute applies to Title 10 [insurers] (which is what the legislature did), or whether the legislature in 1997 had passed the P.A. Statute and made it silent as to whether it applied to [BCBS] yet amended Title 10 to indicate that the P.A. Statute applies to Title 10 [insurers] (which the legislature did not do), is a question for the legislature to decide and not the courts. Under the Alabama Constitution, the legislative power is vested in the legislature (Alabama Constitution § 44) and it is not vested in the courts (in Ala. Const. § 42), and under the Alabama constitutional doctrine of separation of powers it is up to the legislature and not the courts how the legislature does its legislative business, so long as the Alabama Constitution is followed. Alabama Constitution § 42; Ex parte Governor Fob James, 836 So.2d 813 (Ala. 2002)."
The Nielsen III Court rejected an argument identical to the one relied upon by the trial court. The Nielsen III Court rejected the same argument presented by the providers here — that the exemption statutes imposed an additional requirement for the enactment of legislation and that such a requirement conflicted with the legislative procedure established by the Alabama Constitution. Nielsen III, 714 So.2d at 297. The Nielsen III
Court stated:
 "Section 10-4-115 merely requires that if the Legislature is intending to change the provisions of § 10-4-100 [et seq.], then the legislation that makes that change must explicitly show that intention; this requirement is consistent with the requirements of § 45 of the Constitution for providing notice of the purposes of an Act."
714 So.2d at 297.
As discussed above, the Legislature in 1997 did not explicitly express its intention to make the Physician Assistant Act applicable to BCBS. I also disagree with the trial court's application of the recited principles of constitutional law, for a different reason. The trial court's conclusion is premised upon its belief that the exemption statutes somehow improperly restricted the power of the 1997 Legislature and that the 1997 Legislature therefore was empowered to disregard those statutes. The trial court also concluded that the issue how to make the subsequent legislation *Page 967 
applicable to BCBS was for the Legislature, not the courts, to decide.
I recognize that the 1997 Legislature, like any other legislature, was vested with the power to, among other things, enact statutes. This is exactly what the 1939 Legislature did when it enacted § 10-4-115 and what the 1997 Legislature did when it enacted the Physician Assistant Act. Both of those legislatures enacted statutes in the form required by the Alabama Constitution.
However, both exemption statutes were existing, validly enacted statutes at the time the 1997 Legislature chose to address, among other things, Title 10 insurers by enacting the Physician Assistant Act. The exemption statutes provided express instructions to the 1997 Legislature as to how to make insurance statutes apply to Title 10 insurers, but the 1997 Legislature chose not to follow those instructions. Had the 1997 Legislature wished to make the Physician Assistant Act applicable to BCBS, it could have followed the instructions provided in § 10-4-115 and §27-51-1. Alternatively, if the 1997 Legislature believed the exemption statutes improperly limited its power or simply did not wish to follow the mandate of those statutes, it had the power to repeal or amend those statutes. Nothing in the exemption statutes purports to restrain a subsequent legislature's power to make, alter, amend, or repeal laws. This is the power granted to a legislative body. See Freeman v. City of Mobile, 761 So.2d 235
(Ala. 1999). In that manner, the 1997 Legislature remained unfettered in the exercise of its legislative power.
However, the power granted to a legislature under the Constitution of Alabama does not include the freedom from judicial review if the legislature disregards an existing statutory mandate and enacts legislation that conflicts with an existing statute. If a legislature acts in that manner, the Court must apply principles of statutory construction to resolve the resulting conflict.
Dr. Hodurski has raised legitimate concerns in support of his position. For example, Dr. Hodurski presented evidence indicating that BCBS is responsible for 70 to 85% of the private health-insurance market in Alabama. Dr. Hodurski also presented evidence indicating that there is a critical shortage of primary care doctors in Alabama, that physician assistants are capable of performing many of the same functions a primary care doctor performs but at a lower cost, and that the Legislature enacted the Physician Assistant Act in order to increase access to health care for the citizens of Alabama. Dr. Hodurski also presented evidence indicating that the majority of the physician assistants who are trained at universities in Alabama seek employment outside of the state because of financial considerations. Finally, Dr. Hodurski produced evidence tending to indicate that BCBS's policy of not reimbursing the costs of services rendered by physician assistants is a factor contributing to this problem. Regardless of whether we agree with Dr. Hodurski's characterization of the evidence and the necessity for mandated coverage for physician assistants, the Legislature is the proper governmental body to address the policy considerations Dr. Hodurski raises. I would reverse the judgment of the trial court and remand the cause for the entry of a judgment in favor of BCBS. Therefore, I dissent.
SEE, J., concurs.
[4] Those statutes did not specifically reference Title 10 insurers or BCBS. However, BCBS is, and at all times relevant to those statutes was, a "nonprofit health service organization." So the statutes at issue unequivocally included BCBS.
[5] I discuss this issue in more detail later in this dissenting opinion.
[6] I also note that the Legislature did not include in the Physician Assistant Act general repealer language (e.g., "all laws or parts of laws which conflict with this act . . . are repealed"). Thus, I cannot conclude that by enacting the Physician Assistant Act, the Legislature intended to repeal any existing statute or any part of an existing statute that conflicted with the Physician Assistant Act.
[7] BCBS correctly points out that the exemption statutes, §§10-4-115 and 27-1-4(2), have been applied to bar other insurance statutes from applying to BCBS. See § 27-46-1 et seq., Ala. Code (the Certified Registered Nurse Anesthetist Act); § 27-1-19, Ala. Code (the Assignment Act); § 27-19A-1 et seq., Ala. Code (the Dental Act); § 27-45-1 et seq. (the Pharmacy Act); and § 27-1-10, Ala. Code (the Chiropractors Act). Federal and state courts have relied upon the exemption statutes in concluding that those acts do not apply to BCBS. See Nielsen I; Nielsen II; Nielsen III, supra; and Hayden v. Blue Cross Blue Shield, 843 F.Supp. 1427
(M.D.Ala. 1994) (holding that a 1989 insurance statute governing payments to certified registered nurse anesthetists did not apply to BCBS because § 10-4-115 was not amended to so state). *Page 968