I concur with the main opinion insofar as it affirms the trial court's dismissal of David Marks's claims against Dr. Lois H. Pope. However, because I disagree with the main opinion's conclusion that the psychotherapist-patient privilege has been overruled implicitly by § 26-14-9, Ala. Code 1975, which provides immunity for reporters of suspected child abuse, I respectfully dissent as to the affirmance of the dismissal as to Dr. Thomas Tenbrunsel. I also note that because the psychotherapist-patient privilege provides that communications between psychotherapists and their patients are to be afforded the same level of protection as those provided by law for communications between an attorney and his or her client, this case is important not only for what it holds, but also for its precedential effect on the scope of the attorney-client privilege.[6]
Marks contacted Alabama Psychological Services Center, LLC, seeking psychological treatment. According to Marks, before he disclosed any information to his treating physician, Dr. Tenbrunsel, Marks and Dr. Tenbrunsel discussed the confidential nature of communications made during the course of Marks's treatment. Marks states that Dr. Tenbrunsel guaranteed that any statements made by Marks during *Page 1265 
treatment would be confidential.[7] Marks states that he relied on Dr. Tenbrunsel's alleged assurances and that he told Dr. Tenbrunsel that he needed treatment because he had fondled two girls under the age of 12.[8] After Marks disclosed this information, Dr. Tenbrunsel consulted with his colleague, Dr. Pope, and then told Marks that he would not be able to honor the psychotherapist-patient privilege; Dr. Tenbrunsel reported the suspected child abuse by Marks to the Department of Human Resources.
Marks sued Dr. Tenbrunsel, Dr. Pope, and Alabama Psychological Services, alleging malpractice, misrepresentation of material facts, fraud, and fraudulent deceit. Dr. Tenbrunsel, Dr. Pope, and Alabama Psychological Services moved for a judgment of dismissal pursuant to Rule 12(b)(6), Ala. R. Civ. P., arguing that they are immune from liability because they were authorized to report the abuse and thus were entitled to immunity under §26-14-9, Ala. Code 1975.[9] The trial court granted the motion to dismiss; Marks appeals.
Marks's principal argument on appeal is that the immunity provided to health-care professionals who report child abuse under § 26-14-9, Ala. Code 1975, does not preempt the psychotherapist-patient privilege. Marks argues that his communication with Dr. Tenbrunsel during Marks's treatment is confidential and that Dr. Tenbrunsel breached the psychotherapist-patient privilege when he disclosed information that Marks revealed during his treatment by reporting the suspected child abuse to the Department of Human Resources.
Section 34-26-2, Ala. Code 1975, as most recently amended effective October 1, 1997, provides:
 "For the purpose of this chapter, the confidential relations and communications between licensed psychologists, licensed psychiatrists, or licensed psychologist technicians and their clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communications to be disclosed."
"The psychotherapist-patient privilege in Alabama is patterned after, and given the same level of protection as, the privilege protecting the confidentiality of lawyer-client communications."Ex parte Etherton, 773 So.2d 431, 435 (Ala. 2000). Attorneys *Page 1266 
must "`maintain inviolate the confidence and at every peril to themselves . . . preserve the secrets of their clients.' This we take to be equated to the privilege of psychiatrists and psychologists." Ex parte Day, 378 So.2d 1159, 1162 (Ala. 1979).
 "Accordingly, like the attorney-client privilege on which it is modeled, the psychotherapist-patient privilege is personal to the patient, and only the patient may waive it." Ex parte United Serv. Stations, Inc., 628 So.2d 501, 505 (Ala. 1993); Watson v. State, 504 So.2d 339 (Ala.Crim.App. 1986). "The privilege provides a patient the right to refuse to disclose, and to prevent others from disclosing, confidential communications between the patient and psychotherapist made for the purposes of diagnosis or treatment of the patient's mental condition. . . ." 628 So.2d at 503. In order to waive the privilege, the patient must state a clear intent not to rely upon the privilege. 628 So.2d at 505.
Those who report child abuse should be immune from liability for doing so. However, it is also true that communications between a psychotherapist and his or her patient are afforded the same protection as those between an attorney and his client. §34-26-2.[10] There are important public policies at issue in situations where the information on which the child-abuse report was based was obtained by a person acting in his or her capacity as the psychotherapist or the attorney for the person who made the disclosure. Discouraging patients from going to or trusting a psychotherapist will frustrate society's efforts to correct aberrant behavior. The public policy on which the psychotherapist-patient privilege is based is not easily outweighed by competing interests. Ex parte United Serv.Stations, 628 So.2d at 504.[11]
 "Statutes such as § 34-26-2 are intended to inspire confidence in the patient and encourage him in making a full disclosure to the physician as to his symptoms and condition, by preventing the physician from making public information that would result in humiliation, embarrassment, or disgrace to the patient, and are thus designed to promote the efficacy of the physician's advice or treatment. The exclusion of the evidence rests in the public policy and is for the general interest of the community. See 81 Am.Jur.2d Witnesses § 231 at 262 (1976); Annot., 44 A.L.R.3d 24 Privilege, in Judicial or Quasi-Judicial Proceedings, Arising from Relationship Between Psychiatrist or Psychologist and Patient
(1972).
 "`[A] psychiatrist must have his patient's confidence or he cannot help him. "The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist *Page 1267 
not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition. . . . It would be too much to expect them to do so if they knew that all they say — and all that the psychiatrist learns from what they say — may be revealed to the whole world from a witness stand.'"
 "Taylor v. United States, 222 F.2d 398, 401 (D.C. Cir. 1955), quoting Guttmacher and Weihofen, Psychiatry and The Law (1952), p. 272."
Ex parte Rudder, 507 So.2d 411, 413 (Ala. 1987).
The main opinion holds that the immunity statute, § 26-14-9, Ala. Code 1975, repeals by implication the privilege statute, §34-26-2, with respect to the disclosure of information that falls within the sweep of the immunity statute.[12] Repeal by implication is not a favored rule of statutory construction. SeeFletcher v. Tuscaloosa Fed. Sav. Loan Ass'n, 294 Ala. 173,176-77, 314 So.2d 51 (1975). For the immunity statute to impliedly repeal a portion of the psychotherapist-patient privilege statute, the two laws must be so repugnant to or in conflict with one another that it must be presumed the Legislature intended that the latter repeal the former.294 Ala. at 176, 314 So.2d at 51.
 "`Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes. When the provisions of two statutes are directly repugnant and cannot be reconciled, it must be presumed that the legislature intended an implied repeal, and the later statute prevails as the last expression of legislative will.'"
294 Ala. at 177, 314 So.2d at 51 (quoting State v. Bay Towing Dredging Co., 265 Ala. 282, 289, 90 So.2d 743, 749 (1956)).
Dr. Tenbrunsel was not required by § 26-14-3, Ala. Code 1975, to report Marks's conduct. Marks does not dispute that Dr. Tenbrunsel would have been entitled to immunity if he had been required to disclose his actions under § 26-14-3. That section requires psychotherapists who are "called upon to render aid or medical assistance to any child" to report child abuse. Marks agrees that health-care professionals are granted immunity when they act pursuant to the mandate of § 26-14-3. However, while §26-14-3 imposes a mandatory duty, § 26-14-9 — the Code section at issue in this case — also provides immunity for permissive reporting under § 26-14-4. Section 26-14-9, as most recently amended effective April 22, 1998, states:
 "Any person, firm, corporation, or official, including members of a multidisciplinary child protection team, quality assurance team, child death review team, or other authorized case review team or panel, by whatever designation, participating in the making of a good faith report in an investigation or case review authorized under this chapter or other law or department practice or in the removal of a child pursuant to this chapter, or participating in a judicial proceeding resulting therefrom, shall, in so doing, be immune from any liability, civil or criminal, that might otherwise be incurred or imposed."
The psychotherapist-patient privilege applies to statements made by a patient *Page 1268 
during the course of the patient's psychological treatment. On the other hand, the immunity statute applies to "any person, firm, corporation, or official . . . participating in the making of a good faith report in an investigation or case review authorized under this chapter or other law or department practice. . . ." § 26-14-9, Ala. Code 1975. The privilege statute is intended to protect patients who seek psychotherapy; the immunity statute is intended to protect those persons who in good faith report child abuse during the course of "an investigation or case review authorized under this chapter or other law or department practice." These two laws are not so repugnant to or in such conflict with one another that it must be presumed that the Legislature intended the latter to repeal the former. The psychotherapist-patient privilege has a substantial field of operation notwithstanding the immunity statute. See generallyBlue Cross Blue Shield of Alabama v. Hodurski, 899 So.2d 949,962 (Ala. 2004) (Stuart, J., dissenting). The psychotherapist-patient privilege applies to those communications made by a patient to a psychotherapist during the course of that patient's therapy. In other situations, anyone who reports child abuse under § 26-14-4 is shielded with immunity when he or she does so. The two provisions "can be ascribed mutually exclusive fields of operation thereby avoiding any repeal by implication."See Fletcher, 294 Ala. at 177, 314 So.2d at 55.
I therefore respectfully dissent from that portion of the main opinion that affirms the dismissal as to Dr. Tenbrunsel.
[6] Section 34-26-2, Ala. Code 1975, provides:
 "For the purpose of this chapter, the confidential relations and communications between licensed psychologists, licensed psychiatrists, or licensed psychological technicians and their clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed."
[7] On January 1, 1996, this Court adopted Rule 503(b), Ala. R. Evid., which states:
 "(b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family."
[8] The mothers of the two girls told Marks that they would not pursue criminal charges against him provided he complete a sex-offender treatment program.
[9] Section 26-14-9 provides:
 "Any person, firm, corporation, or official, including members of a multidisciplinary child protection team, quality assurance team, child death review team, or other authorized case review team or panel, by whatever designation, participating in the making of a good faith report in an investigation or case review authorized under this chapter or other law or department practice or in the removal of a child pursuant to this chapter, or participating in a judicial proceeding resulting therefrom, shall, in so doing, be immune from any liability, civil or criminal, that might otherwise be incurred or imposed."
[10] See Ex parte Rudder, 507 So.2d 411, 416 (Ala. 1987). The purpose of the attorney-client privilege, upon which the psychotherapist-patient privilege is modeled, is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of the law and administration of justice." Upjohn Co. v.United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (holding that communications by corporate employees to counsel made in order to secure advice were protected); see also Jay v.Sears Roebuck Co., 340 So.2d 456 (Ala.Civ.App. 1976).
[11] But see Rudder, 507 So.2d at 417 ("[The] psychiatrist-patient privilege may not in all cases be an impenetrable shield."); see also Harbin v. Harbin, 495 So.2d 72
(Ala. 1986) (recognizing an exception to the privilege in child-custody cases where the mental state of one of the parents is at issue); Free v. State, 455 So.2d 137 (Ala.Crim.App. 1984) (stating that the privilege is unavailable where a criminal defendant raises an insanity defense).
[12] The impact of the immunity statute on the attorney-client privilege, which is the model upon which the psychotherapist-patient privilege is based, is not before us; however, the implications are obvious.