This is a child custody modification case.
The parties were divorced on July 5, 1979. At that time they had no children. The mother gave birth to a son, Nicholas, on December 25, 1980.
On December 11, 1981 the father filed a petition to modify the divorce decree, seeking to legitimate the child and to obtain visitation privileges. The court legitimated the child and required the father to pay child support to the mother, who was awarded permanent custody of the child.
In June 1985 the mother voluntarily committed herself into the psychiatric ward of Brookwood Medical Center in Birmingham, Alabama. By agreement of the parties, Nicholas stayed with the father and the father's family.
On July 11, 1985 the mother filed a petition for injunctive relief and rule nisi, alleging that the father had violated the amended decree by detaining the parties' minor son in his custody for approximately one month, and that he refused to allow her access to the child. Several days later a hearing on the mother's petition was held. On that date the father was awarded temporary custody of the child pending a final hearing.
A counterpetition for modification was filed by the father on July 26, 1985. In this petition the father alleged that the mother was not raising their son in a proper moral atmosphere, and that she was suffering from emotional problems, rendering her unable to care for Nicholas. On September 16, 1985 the mother answered this petition, denying its allegations.
On August 21, 1985 notice of intent to serve a subpoena on Brookwood Medical Center, a nonparty, and a Dr. Mallory F. Miree was filed by the father, requesting production of certain medical records concerning the care and treatment of the mother. A motion to quash was filed by Brookwood Medical Center, which was followed by a motion to compel filed by the father. These motions were heard in camera on November 19, 1985. Thereafter, the court granted the father's motion to compel and ordered Brookwood Medical Center to disclose to the court the records sought by subpoena. After reviewing these records the court allowed the father access to them.
In late November 1985 the final hearing on the mother's petition for injunctive relief and rule nisi and the father's counter-petition for modification was held. On December 4, 1985 the court issued an order denying the mother's petition and granting the father's counterpetition for modification, thereby vesting custody of Nicholas in the father. It is from this order that the mother appeals.
The mother's first contention is that the trial court erred when it allowed the admission into evidence of certain copies of and specific testimony pertaining to the Brookwood Medical Center hospital records. To support her contention, the mother argues that these records were inadmissible because *Page 74 
they were not properly authenticated. She also argues that certain statements relating to her fear of homosexual tendencies, use of alcohol, and threat of using a gun on Nicholas's father were inadmissible hearsay because they were contained in her medical records and were also inadmissible because their admission violated her psychiatrist-patient privilege.
As to the mother's contention that the admission of the hospital records violated her psychiatrist-patient privilege pursuant to section 34-26-2, Code of Alabama 1975, we disagree.
Section 34-26-2, Code 1975, does provide for confidential relations and communications between licensed psychologists or psychiatrists and their patients. We have held, however, that "where the issue of the mental state of a party to a custody suit is clearly in controversy, and a proper resolution of the custody issue requires disclosure of privileged medical records, the psychologist-patient privilege must yield." Matterof Von Goyt, 461 So.2d 821 (Ala.Civ.App. 1984) (citations omitted).
In the instant case the father's counterpetition for custody modification clearly placed the issue of the mother's mental state in question. Thus, it became the court's duty to determine whether a proper resolution of the custody issue required disclosure of the mother's medical records. This the court clearly did by holding an in camera hearing, with all parties represented, to decide whether the asserted privilege and confidentiality of the records should yield to the issue of Nicholas's best interests and well-being. After the hearing the court determined that the privilege would not prevent the admission of the hospital records into evidence.
Next, the mother argues that the records were not admissible because they had not been properly authenticated. While such may be true, we cannot now address this contention on appeal because the record clearly reveals that the question of the authenticity of these records was not properly preserved for our review. Although the mother did object to the introduction of these records, her objection was a specific one in which she failed to assert authenticity as a ground.
The hospital records accepted into evidence did not contain a certificate of the custodian thereof. But the wife did not object on this ground, i.e. that the records were not properly authenticated or certified. Not having objected on this ground, the wife waived such objection. Vetter v. Federal DepositInsurance Corp., 426 So.2d 444 (Ala.Civ.App. 1983). The wife, however, did object on the ground that the records were hearsay.
Hospital records not shown to have been kept in the regular and ordinary course of business do not come within the exception to the hearsay rule. Pickett v. State, 456 So.2d 330
(Ala.Crim.App. 1982). The record fails to show that the records in question were kept in the ordinary course of business as required by sections 12-21-5 through -7, Code 1975. The failure to show that the records were kept in accordance with sections12-21-5 through -7 makes the records objectionable as hearsay. Thus, the failure of the trial court to sustain the objection to the admission of the hospital records constitutes error. However, as we will demonstrate, this error was not injurious to the substantial rights of the mother and, thus, does not require reversal of the trial court's decree. Rule 45, Alabama Rules of Appellate Procedure.
The record reveals that without any reference to the mother's medical records and absent objection by counsel for the mother, the mother testified that she had discussed the possibility of engaging in a homosexual relationship with a coworker. She also testified that she was worried about an exhibition of homosexual tendencies. She also admitted to consuming "a lot" of alcoholic beverages and to having had sexual relations with her live-in lover while Nicholas was present in their trailer. She denied ever having sexual relations in front of Nicholas, but she testified that Nicholas *Page 75 
frequently slept in the bed with her and her lover.
The record also reveals that on one occasion the mother had a loaded pistol which she was threatening to use on her ex-husband, Nicholas's father. After this episode she also admitted that she had contemplated shooting herself. She also testified that she felt a great deal of hostility towards men.
Aside from the mother's own admissions, there was testimony from others bearing on the mother's ability to properly care for a child. Nicholas's father testified that he was aware of the mother's tendency to become heavily intoxicated and make herself available to other men. Additionally, there was testimony from a clinical psychometrist who had reviewed the mother's hospital records. He testified that the mother was diagnosed as a repressive disorder chronic who abused alcohol to treat her mental anguish. There was no objection by counsel for the mother to this testimony.
Thus, reviewing the evidence as a whole, we conclude that the admission of the mother's medical records was harmless error.
The mother's next contention is that the trial court erred by allowing into evidence certain testimony by the father concerning an incident that he observed between Nicholas and his stepbrother. The mother argues that several statements made by the boys to the father were inadmissible hearsay.
A review of the record convinces us that the statements in question were inadmissible hearsay. However, there was other testimony as to what the children had said to the father and at no time did counsel for the mother object to nor move to exclude this testimony.
The incident observed by the father which led to the boy's statements to him was, according to Nicholas, a reenactment of what he had observed his mother and her male friends doing.
The rule is that error in the admission of evidence can be harmless where substantially the same evidence was admitted without objection. Stoudemire v. Stoudemire, 437 So.2d 585
(Ala.Civ.App. 1983). See also, Lumber Fabricators, Inc. v.Appalachian Oak Flooring Hardwood Corp., 41 Ala. App. 570,141 So.2d 210 (1962). Consequently, we find that although the court did err by allowing the father to testify as to what the boys told him this error was not sufficient to mandate reversal in light of all of the testimony in the record. See, A.R.A.P. 45.
The final issue raised by the mother is whether the trial court had before it sufficient evidence to justify a change in custody of Nicholas.
The testimony at trial showed that for approximately two years the mother lived with a man to whom she was not married and that Nicholas often slept in the bed with them. The mother also testified that she had never had sexual relations when Nicholas was in the room. However, in light of what the father observed occurring between Nicholas and his stepbrother, this testimony could certainly have been questioned by the court.
The mother also testified that she had not had sex with any other men, and yet her own sister testified that the mother had had relations with the sister's husband. Further, there was evidence of the mother's relations with other men and her fear of homosexual tendencies because of her inability to adequately perform with a particular man.
In addition to testimony regarding the mother's sexual activities, there was testimony pertaining to her increased consumption of alcohol. She also testified that she had on one occasion threatened the father with a gun and later contemplated turning the gun on herself.
The primary consideration for the court in a change of custody proceeding is the best interests of the child. Keith v.Keith, 380 So.2d 889 (Ala.Civ.App. 1980). *Page 76 
When evidence in a child custody case has been received orally by the trial court, a presumption of correctness surrounds its findings, and its judgment will not be set aside by this court absent a determination that the trial court's decree is plainly and palpably wrong. McKinney v. AlabamaDepartment of Pensions Security, 475 So.2d 568 (Ala.Civ.App. 1985).
A careful review of the record convinces us that the trial court's decision to modify child custody is sufficiently supported by the evidence and it is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.