910 So.2d 1255 (2005)
David Kenneth MARKS
v.
Dr. Thomas W. TENBRUNSEL et al.
1031515.
Supreme Court of Alabama.
April 22, 2005.
*1257 David K. Marks, pro se.
Robert E. Parsons and Dorothy A. Powell of Parsons, Lee & Juliano, P.C., Birmingham; and John J. Callahan, Jr., of Richardson Callahan, LLP, Huntsville, for appellees.
LYONS, Justice.
David Kenneth Marks sued Dr. Thomas W. Tenbrunsel, Dr. Lois H. Pope, and Alabama Psychological Services Center, LLC. The defendants filed a motion for a Rule 12(b)(6), Ala. R. Civ. P., dismissal of the case for failure to state a claim, which the trial court granted. Marks appeals; we affirm.

I. Facts and Procedural History
Marks contacted Alabama Psychological Services Center, LLC, to obtain psychological treatment. Marks met with Dr. Thomas W. Tenbrunsel, a psychologist employed by Alabama Psychological Services, at its offices. According to Marks, Dr. Tenbrunsel assured him that anything Marks disclosed during their meeting would remain confidential. Marks then admitted to fondling the genitals of two females under the age of 12. Marks claims that "[a]fter consulting with a colleague, Dr. Tenbrunsel announced to Marks that he would not honor [the confidentiality agreement]." (Marks's brief at xvi.) Marks alleges in his complaint that Dr. Lois H. Pope was the colleague with *1258 whom Dr. Tenbrunsel consulted. Marks further alleges that Dr. Tenbrunsel informed him that "a report [of the suspected child abuse] would be made to Child Protective Services at the Madison County Department of Human Resources."
Marks sued Dr. Tenbrunsel, Dr. Pope, and Alabama Psychological Services, alleging malpractice, misrepresentation of material facts, fraud, and fraudulent deceit. According to Marks, the defendants' actions caused Marks to be prosecuted for his admitted sexual misconduct. He also alleged other damage, including mental anguish, health problems, and monetary loss.
Dr. Tenbrunsel, Dr. Pope, and Alabama Psychological Services moved for a judgment of dismissal pursuant to Rule 12(b)(6), Ala. R. Civ. P., on the basis that Marks had failed to state a claim upon which relief could be granted. The trial court granted that motion, and this appeal followed.

II. Standard of Review
"On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala.1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772 (Ala.Civ.App.1989). The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App. 1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala. 1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986)."
Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993).

III. Analysis

A. Statutory Immunity
The defendants argue that they are immune from civil liability arising from their reporting of suspected child abuse. Section 26-14-9, Ala.Code 1975, grants immunity to certain persons, firms, corporations, and officials who report child abuse to the appropriate authorities. Included in those granted immunity by that section are persons and entities that are required, pursuant to § 26-14-3, Ala.Code 1975, to report suspected child abuse. Section 26-14-3 states:
"(a) All hospitals, clinics, sanitariums, doctors, physicians, surgeons, medical examiners, coroners, dentists, osteopaths, optometrists, chiropractors, podiatrists, nurses, school teachers and officials, peace officers, law enforcement officials, pharmacists, social workers, day care workers or employees, mental health professionals, members of the clergy as defined in Rule 505 of the Alabama Rules of Evidence, or any other person called upon to render aid or medical assistance to any child, when the child is known or suspected to be a victim of child abuse or neglect, shall be required to report, or cause a report to be made of the same, orally, either by telephone or direct communication immediately, followed by a written report, to a duly constituted authority."
*1259 (Emphasis added.) Marks argues that the defendants in this case were not "called upon to render aid or medical assistance to any child" within the meaning of § 26-14-3 and therefore are not entitled to the immunity afforded by § 26-14-9.
Section 26-14-3, however, is not the only Code section that authorizes the reporting of suspected child abuse. Section 26-14-4, Ala.Code 1975, provides: "In addition to those persons, firms, corporations, and officials required by Section 26-14-3 to report child abuse and neglect, any person may make such a report if such person has reasonable cause to suspect that a child is being abused or neglected." (Emphasis added.) In the instant case, because Marks admitted the abuse to Dr. Tenbrunsel, the defendants had reasonable cause to suspect that a child was being abused. Therefore, while Dr. Tenbrunsel and Dr. Pope were not required by § 26-14-3 to report the abuse, they were permitted to do so under § 26-14-4.
In Hall v. Van's Photo, Inc., 595 So.2d 1368 (Ala.1992), a case ignored by Marks, the plaintiffs sued a photography shop after its vice president notified the FBI that the plaintiffs had the photo shop develop nude pictures of their three-year-old son. This Court held that the photo shop had reasonable cause to make the report pursuant to the permissive reporting provision of § 26-14-4. The Court also applied § 26-14-9, as that section provided at the time Hall was decided, and affirmed the trial court's summary judgment for the photo shop based on the immunity provided by § 26-14-9. At the time Hall was decided, § 26-14-9 read:
"`Any person, firm, corporation or official participating in the making of a report or the removal of a child pursuant to this chapter, or participating in a judicial proceeding resulting therefrom, shall, in so doing, be immune from any liability, civil or criminal, that might otherwise be incurred or imposed.'"
595 So.2d at 1370. The plaintiffs in Hall argued that there existed a genuine issue of material fact as to whether the photo shop had promised to keep the photographs confidential. This Court rejected that argument and held that the photo shop was entitled to immunity under § 26-14-9. Therefore, even if we assume that Marks could prove a promise of confidentiality or some other similar understanding between him and Dr. Tenbrunsel, Marks would have no remedy in damages for a breach of that promise if the defendants are afforded immunity under § 26-14-9.
The Legislature amended § 26-14-9 in 1998. That section now provides:
"Any person, firm, corporation or official, including members of a multidisciplinary child protection team, quality assurance team, child death review team, or other authorized case review team or panel, by whatever designation, participating in the making of a good faith report in an investigation or case review authorized under this chapter [Chapter 14] or other law or department practice or in the removal of a child pursuant to this chapter, or participating in a judicial proceeding resulting therefrom, shall, in so doing, be immune from any liability, civil or criminal, that might otherwise be incurred or imposed."
(Emphasis added.) We conclude that the initial reporting of suspected child abuse to the appropriate authorities is part of the investigation contemplated by Chapter 14, Ala.Code 1975. Therefore, a person who makes such a report or causes such a report to be made is to be considered a person who "participat[es] in the making of a good faith report in an investigation or case review authorized under [Chapter 14]," and is therefore entitled to the benefit of the immunity granted by § 26-14-9, *1260 as amended. See Preamble to Act No. 98-371, Ala. Acts 1998 ("An Act, To amend Section[ ] . . . 26-14-9 . . . to provide immunity from liability for investigations and actions to members of multidisciplinary child protection and other case review teams and for good faith reporting of suspected child abuse or neglect."). Construing § 26-14-9 to limit the availability of immunity from liability to only those persons reporting suspected child abuse after an investigation has already begun would deprive persons of the incentive to make an initial report of child abuse, thereby drastically frustrating the legislative purpose in enacting Chapter 14.[1] See Ex parte Meeks, 682 So.2d 423, 428 (Ala.1996) ("`A construction [of a statute] resulting in absurd consequences as well as unreasonableness will be avoided.'" (quoting Norman J. Singer, Sutherland Statutory Construction § 45.11, p. 61 (5th ed. 1993))).
The immunity from liability provided by § 26-14-9 for reporting suspected child abuse applies only to one who makes such a report in good faith. The year before the Legislature adopted the "good faith" requirement, this Court, in Evans v. Waddell, 689 So.2d 23 (Ala.1997), construing the predecessor to § 26-14-9, held that defendants who had allegedly induced others to make false reports of child abuse were protected by absolute statutory immunity from liability for those reports. In the next session of the Legislature, § 26-14-9 was amended to add the requirement that the report of suspected child abuse be made in "good faith" as a prerequisite to immunity from liability. See Act No. 98-371, Ala. Acts 1998.
In Abbott Laboratories v. Durrett, 746 So.2d 316, 339 (Ala.1999), this Court restated the rule that "`it is permissible in ascertaining [the purpose and intent of a statute] to look to the history of the times, the existing order of things, the state of the law when the instrument was adopted, and the conditions necessitating such adoption.'" (quoting In re Upshaw, 247 Ala. 221, 23 So.2d 861 (1945)). On other occasions, this Court has recognized an obvious nexus between judicial decisions and subsequent legislation. See, e.g., Clark v. Jefferson Fed. Sav. & Loan Ass'n of Birmingham, 571 So.2d 1032, 1034 (Ala.1990) ("The Alabama legislature amended §§ 43-2-60 and -61 in response to [Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478 (1988),] to remedy the procedural defect apparent in those statutes: the provision for constructive notice only, regardless of whether the creditors were known or reasonably ascertainable."); State Dep't of Revenue v. Reynolds Metals Co., 541 So.2d 524, 526 (Ala.1988) ("In response to [Ex parte City of Leeds, 473 So.2d 1060 (Ala.1985)], the Legislature amended Code 1975, § 11-51-91, effective April 29, 1986."). We do so again in this instance. The addition by the Legislature of a good-faith requirement to § 26-14-9, in response to this Court's holding in Evans v. Waddell, indicates the Legislature's intent to withhold immunity from those *1261 who, in bad faith, cause the making of false reports of child abuse.
This conclusion is buttressed by the purpose of Chapter 14: "In order to protect children whose health and welfare may be adversely affected through abuse and neglect, the legislature hereby provides for the reporting of such cases to the appropriate authorities." § 26-14-2, Ala.Code 1975. Sections 26-14-3 and 26-14-4, along with the immunity granted by § 26-14-9, are therefore intended to promote the reporting of child abuse. In light of the clear legislative purpose of Chapter 14, along with the fact that the decision in Evans, which applied § 26-14-9 to protect persons who made false reports of child abuse, was immediately followed by the addition to § 26-14-9 of the requirement of "making a good faith report," we construe the standard of good faith in § 26-14-9 as amended to apply only to the basis for a report of suspected child abuse, not to the conduct of the reporting person in his or her dealings with an alleged perpetrator of child abuse. Any other construction would stifle the reporting of bona fide instances of child abuse, contrary to the expressed legislative purpose of Chapter 14, and would protect the perpetrator, thereby emasculating the legislative purpose of promoting the reporting of suspected child abuse.
Under the permissive reporting provision of § 26-14-4, the existence of reasonable cause triggers the authority to make a report. We hold that if a person has "reasonable cause to suspect that a child is being abused or neglected," then that person acts in "good faith" within the meaning of § 26-14-9 when making a report authorized under § 26-14-4.[2] Because Marks admitted to the abuse of the two children, Dr. Pope and Dr. Tenbrunsel had reasonable cause to suspect that children were being abused.[3] Therefore, we conclude that Dr. Tenbrunsel and Dr. Pope were acting in good faith within the meaning of § 26-14-9 when they determined that a report should be made.

B. Psychotherapist-Patient Privilege
Marks relies substantially on the psychotherapist-patient privilege, which he says trumps the immunity granted by § 26-14-9. The psychotherapist-patient privilege is stated in Rule 503, Ala. R. Evid.:
"(b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family."
The Advisory Committee's Notes to Rule 503, Ala. R. Evid., refer to § 34-26-2, Ala. Code 1975, stating: "Alabama statutory law has long recognized a psychologist-client privilege. Ala.Code 1975, § 34-26-2." Section 34-26-2 provides that confidential communications between psychologists, psychiatrists, psychological technicians, and their clients are privileged to *1262 the same extent as communications between an attorney and his or her clients.
Section 26-14-9, the immunity provision of the child-abuse reporting statutes, was originally enacted in 1965, two years after the Legislature first codified the psychotherapist-patient privilege in § 34-26-2. Ten years after that, the Legislature enacted § 26-14-4, the permissive reporting provision. In Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949 (Ala. 2004), we acknowledged the restatement of the doctrine of implied repeal:
"`"`"Repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former. . . ."
"`"`Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes. When the provisions of two statutes are directly repugnant and cannot be reconciled, it must be presumed that the legislature intended an implied repeal, and the later statute prevails as the last expression of the legislative will.'"'"
Blue Cross & Blue Shield, 899 So.2d at 959-60 (quoting Fletcher v. Tuscaloosa Fed. Sav. & Loan Ass'n, 294 Ala. 173, 177, 314 So.2d 51, 55 (1975), quoting in turn State v. Bay Towing & Dredging Co., 265 Ala. 282, 289, 90 So.2d 743, 749 (1956)).
The last expression of legislative will is § 26-14-9, which confers immunity to persons who make good-faith reports of child abuse pursuant to Chapter 14. Section 26-14-4, which provides for permissive reporting of suspected child abuse, applies to "any person" making such a report. This latter act, § 26-14-9, impliedly repeals anything to the contrary in the earlier enacted § 34-26-2, which recognizes a psychotherapist-patient privilege. The rule that implied repeal is disfavored when the earlier act is specific and the subsequent act is general does not apply here.[4] Chapter 14, entitled "Reporting of Child Abuse or Neglect," is not a general or broad act that cannot impliedly repeal an earlier specific act.[5]
Other jurisdictions have held that the psychotherapist-patient privilege must yield to child-abuse reporting laws. In Fewell v. Besner, 444 Pa.Super. 559, 568, 664 A.2d 577, 581 (1995), the Superior Court of Pennsylvania stated:
"Thus, the psychotherapist-patient privilege and the confidentiality provisions of the [Mental Health Procedures Act] must yield to the immunity provision of the [Child Protective Services Law]. Cf., People v. John B., 192 Cal.App.3d 1073, 237 Cal.Rptr. 659 (1987) (holding that psychotherapist-patient privilege is not absolute and must yield to the reporting requirements outlined in California's Child Abuse Reporting Act); State ex rel. D.M. v. Hoester, . . . 681 S.W.2d 449 (1984) (holding that child abuse reporting statute vitiated physician-patient privilege and psychiatrist could be compelled to reveal alleged sexual abuser's medical records in a civil action for damages); People v. Gearhart, 148 Misc.2d 249, 560 N.Y.S.2d 247 (1990) (holding *1263 that the overriding purpose of child abuse reporting statutes is to protect children and the physician-patient privilege cannot be asserted when there is a conflict with child abuse reporting requirements)."

C. Self-Incrimination
Marks argues that the compelled disclosure of confidential communications made during psychotherapy would violate his Fifth Amendment privilege against self-incrimination. The defendants correctly point out that Marks did not make the argument to the trial court as a basis for the denial of the defendants' motion to dismiss.
"This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992). In his reply brief, Marks contends that he did indeed raise his self-incrimination argument in the trial court. In support of this contention he states that "since testimonial privileges are rooted in common law and are authorized in the 14th Amendment, [he] asserted the Fifth Amendment every time [he] used the word Privilege." (Marks's reply brief at 20.) In his answer to the defendants' motion to dismiss, Marks did use the word "privilege." He did so in reference to § 34-26-2, Ala.Code 1975, which makes communications between psychotherapists and their patients confidential. However, Marks made no mention of the privilege against self-incrimination anywhere in his complaint or in his answer to the defendants' motion to dismiss. We are not satisfied that Marks's reference to the privilege recognized in § 34-26-2 for psychotherapist-patient communications was sufficient to afford the trial court an opportunity to rule on Marks's self-incrimination argument. We therefore do not consider that argument on appeal.
Marks argues that his pro se status excuses his procedural error. He states in his reply brief, "[w]hile I have not researched the issue, I feel confident this Court makes accommodations for unintended procedural errors by pro se litigants." First of all, this Court is not obligated to review the record for plain error. And this Court has no obligation in the context here presented to conduct research for an appellant, regardless of whether that party is represented by counsel or appears pro se. McLemore v. Fleming, 604 So.2d 353, 353 (Ala.1992) ("`[I]t is neither our duty nor [our] function to perform all of the legal research for an appellant.'" (quoting Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App.1984))). Moreover, we are not aware of any case in which this Court has given a party, based on the party's pro se status, the benefit of an exception to the rule that an appellate court cannot consider arguments made for the first time on appeal. Because Marks did not argue to the trial court that the child-abuse reporting statutes violated his privilege against self-incrimination, we conclude that he did not preserve for appeal any error based upon that argument.

IV. Conclusion
Dr. Tenbrunsel and Dr. Pope are immune, under to § 26-14-9, from any civil or criminal liability resulting from their good-faith report of suspicions of child abuse. Marks can prove no facts alleged in his complaint that would remove Dr. Tenbrunsel or Dr. Pope from the purview of § 26-14-9, and dismissal was therefore proper. Because Alabama Psychological Services' alleged liability is based on the liability of the individual doctors, it too was entitled to a dismissal. While Marks presents *1264 interesting policy arguments dealing with the incentive of sex offenders to seek treatment and the importance of protecting confidential communications in general, these arguments should be directed to the Legislature, not to this Court.
On appeal, Marks attaches as an appendix to his appellate brief Dr. Tenbrunsel's response to Marks's request for admissions. The response is not a part of the record before us, and we therefore do not consider the response on appeal. See Gotlieb v. Collat, 567 So.2d 1302, 1304 (Ala.1990) ("[T]his Court is limited to a review of the record alone, and the record cannot be changed, altered, or varied on appeal by statements in briefs of counsel."). The defendants have filed in this Court a motion to strike Dr. Tenbrunsel's response. Marks argues that Dr. Tenbrunsel's failure to file his response in the trial court constitutes an abuse of discovery. This contention was not previously raised in the trial court. The fact remains uncontroverted that the trial court did not consider the response to Marks's request for admissions, and we therefore cannot base a reversal of the trial court's judgment of dismissal upon that response. Totten v. Lighting & Supply, Inc., 507 So.2d 502, 503 (Ala.1987) ("[A]n issue not reflected in the record as having been raised in the trial court cannot be raised for the first time on appeal."). The defendants' motion to strike the response is granted.
MOTION TO STRIKE RESPONSE GRANTED; AFFIRMED.
NABERS, C.J., and STUART, SMITH, and BOLIN, JJ., concur.
SEE, HARWOOD, and WOODALL, JJ., concur in the result in part and dissent in part.
PARKER, J., dissents.
SEE, Justice (concurring in the result in part and dissenting in part).
I concur with the main opinion insofar as it affirms the trial court's dismissal of David Marks's claims against Dr. Lois H. Pope. However, because I disagree with the main opinion's conclusion that the psychotherapist-patient privilege has been overruled implicitly by § 26-14-9, Ala.Code 1975, which provides immunity for reporters of suspected child abuse, I respectfully dissent as to the affirmance of the dismissal as to Dr. Thomas Tenbrunsel. I also note that because the psychotherapist-patient privilege provides that communications between psychotherapists and their patients are to be afforded the same level of protection as those provided by law for communications between an attorney and his or her client, this case is important not only for what it holds, but also for its precedential effect on the scope of the attorney-client privilege.[6]
Marks contacted Alabama Psychological Services Center, LLC, seeking psychological treatment. According to Marks, before he disclosed any information to his treating physician, Dr. Tenbrunsel, Marks and Dr. Tenbrunsel discussed the confidential nature of communications made during the course of Marks's treatment. Marks states that Dr. Tenbrunsel guaranteed that any statements made by Marks during *1265 treatment would be confidential.[7] Marks states that he relied on Dr. Tenbrunsel's alleged assurances and that he told Dr. Tenbrunsel that he needed treatment because he had fondled two girls under the age of 12.[8] After Marks disclosed this information, Dr. Tenbrunsel consulted with his colleague, Dr. Pope, and then told Marks that he would not be able to honor the psychotherapist-patient privilege; Dr. Tenbrunsel reported the suspected child abuse by Marks to the Department of Human Resources.
Marks sued Dr. Tenbrunsel, Dr. Pope, and Alabama Psychological Services, alleging malpractice, misrepresentation of material facts, fraud, and fraudulent deceit. Dr. Tenbrunsel, Dr. Pope, and Alabama Psychological Services moved for a judgment of dismissal pursuant to Rule 12(b)(6), Ala. R. Civ. P., arguing that they are immune from liability because they were authorized to report the abuse and thus were entitled to immunity under § 26-14-9, Ala.Code 1975.[9] The trial court granted the motion to dismiss; Marks appeals.
Marks's principal argument on appeal is that the immunity provided to health-care professionals who report child abuse under § 26-14-9, Ala.Code 1975, does not preempt the psychotherapist-patient privilege. Marks argues that his communication with Dr. Tenbrunsel during Marks's treatment is confidential and that Dr. Tenbrunsel breached the psychotherapist-patient privilege when he disclosed information that Marks revealed during his treatment by reporting the suspected child abuse to the Department of Human Resources.
Section 34-26-2, Ala.Code 1975, as most recently amended effective October 1, 1997, provides:
"For the purpose of this chapter, the confidential relations and communications between licensed psychologists, licensed psychiatrists, or licensed psychologist technicians and their clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communications to be disclosed."
"The psychotherapist-patient privilege in Alabama is patterned after, and given the same level of protection as, the privilege protecting the confidentiality of lawyer-client communications." Ex parte Etherton, 773 So.2d 431, 435 (Ala.2000). Attorneys *1266 must "`maintain inviolate the confidence and at every peril to themselves . . . preserve the secrets of their clients.' This we take to be equated to the privilege of psychiatrists and psychologists." Ex parte Day, 378 So.2d 1159, 1162 (Ala.1979).
"Accordingly, like the attorney-client privilege on which it is modeled, the psychotherapist-patient privilege is personal to the patient, and only the patient may waive it." Ex parte United Serv. Stations, Inc., 628 So.2d 501, 505 (Ala.1993); Watson v. State, 504 So.2d 339 (Ala.Crim.App.1986). "The privilege provides a patient the right to refuse to disclose, and to prevent others from disclosing, confidential communications between the patient and psychotherapist made for the purposes of diagnosis or treatment of the patient's mental condition. . . ." 628 So.2d at 503. In order to waive the privilege, the patient must state a clear intent not to rely upon the privilege. 628 So.2d at 505.
Those who report child abuse should be immune from liability for doing so. However, it is also true that communications between a psychotherapist and his or her patient are afforded the same protection as those between an attorney and his client. § 34-26-2.[10] There are important public policies at issue in situations where the information on which the child-abuse report was based was obtained by a person acting in his or her capacity as the psychotherapist or the attorney for the person who made the disclosure. Discouraging patients from going to or trusting a psychotherapist will frustrate society's efforts to correct aberrant behavior. The public policy on which the psychotherapist-patient privilege is based is not easily outweighed by competing interests. Ex parte United Serv. Stations, 628 So.2d at 504.[11]
"Statutes such as § 34-26-2 are intended to inspire confidence in the patient and encourage him in making a full disclosure to the physician as to his symptoms and condition, by preventing the physician from making public information that would result in humiliation, embarrassment, or disgrace to the patient, and are thus designed to promote the efficacy of the physician's advice or treatment. The exclusion of the evidence rests in the public policy and is for the general interest of the community. See 81 Am.Jur.2d Witnesses § 231 at 262 (1976); Annot., 44 A.L.R.3d 24 Privilege, in Judicial or Quasi-Judicial Proceedings, Arising from Relationship Between Psychiatrist or Psychologist and Patient (1972).
"`[A] psychiatrist must have his patient's confidence or he cannot help him. "The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist *1267 not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition. . . . It would be too much to expect them to do so if they knew that all they say  and all that the psychiatrist learns from what they say  may be revealed to the whole world from a witness stand."'
"Taylor v. United States, 222 F.2d 398, 401 (D.C.Cir.1955), quoting Guttmacher and Weihofen, Psychiatry and The Law (1952), p. 272."
Ex parte Rudder, 507 So.2d 411, 413 (Ala.1987).
The main opinion holds that the immunity statute, § 26-14-9, Ala.Code 1975, repeals by implication the privilege statute, § 34-26-2, with respect to the disclosure of information that falls within the sweep of the immunity statute.[12] Repeal by implication is not a favored rule of statutory construction. See Fletcher v. Tuscaloosa Fed. Sav. & Loan Ass'n, 294 Ala. 173, 176-77, 314 So.2d 51 (1975). For the immunity statute to impliedly repeal a portion of the psychotherapist-patient privilege statute, the two laws must be so repugnant to or in conflict with one another that it must be presumed the Legislature intended that the latter repeal the former. 294 Ala. at 176, 314 So.2d at 51.
"`Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes. When the provisions of two statutes are directly repugnant and cannot be reconciled, it must be presumed that the legislature intended an implied repeal, and the later statute prevails as the last expression of legislative will.'"
294 Ala. at 177, 314 So.2d at 51 (quoting State v. Bay Towing & Dredging Co., 265 Ala. 282, 289, 90 So.2d 743, 749 (1956)).
Dr. Tenbrunsel was not required by § 26-14-3, Ala.Code 1975, to report Marks's conduct. Marks does not dispute that Dr. Tenbrunsel would have been entitled to immunity if he had been required to disclose his actions under § 26-14-3. That section requires psychotherapists who are "called upon to render aid or medical assistance to any child" to report child abuse. Marks agrees that health-care professionals are granted immunity when they act pursuant to the mandate of § 26-14-3. However, while § 26-14-3 imposes a mandatory duty, § 26-14-9  the Code section at issue in this case  also provides immunity for permissive reporting under § 26-14-4. Section 26-14-9, as most recently amended effective April 22, 1998, states:
"Any person, firm, corporation, or official, including members of a multidisciplinary child protection team, quality assurance team, child death review team, or other authorized case review team or panel, by whatever designation, participating in the making of a good faith report in an investigation or case review authorized under this chapter or other law or department practice or in the removal of a child pursuant to this chapter, or participating in a judicial proceeding resulting therefrom, shall, in so doing, be immune from any liability, civil or criminal, that might otherwise be incurred or imposed."
The psychotherapist-patient privilege applies to statements made by a patient *1268 during the course of the patient's psychological treatment. On the other hand, the immunity statute applies to "any person, firm, corporation, or official . . . participating in the making of a good faith report in an investigation or case review authorized under this chapter or other law or department practice. . . ." § 26-14-9, Ala.Code 1975. The privilege statute is intended to protect patients who seek psychotherapy; the immunity statute is intended to protect those persons who in good faith report child abuse during the course of "an investigation or case review authorized under this chapter or other law or department practice." These two laws are not so repugnant to or in such conflict with one another that it must be presumed that the Legislature intended the latter to repeal the former. The psychotherapist-patient privilege has a substantial field of operation notwithstanding the immunity statute. See generally Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 962 (Ala.2004)(Stuart, J., dissenting). The psychotherapist-patient privilege applies to those communications made by a patient to a psychotherapist during the course of that patient's therapy. In other situations, anyone who reports child abuse under § 26-14-4 is shielded with immunity when he or she does so. The two provisions "can be ascribed mutually exclusive fields of operation thereby avoiding any repeal by implication." See Fletcher, 294 Ala. at 177, 314 So.2d at 55.
I therefore respectfully dissent from that portion of the main opinion that affirms the dismissal as to Dr. Tenbrunsel.
HARWOOD, Justice (concurring in the result in part and dissenting in part).
I concur in the result insofar as the main opinion affirms the dismissal of David Marks's claims against Dr. Lois H. Pope. I otherwise dissent from the opinion.
WOODALL, Justice (concurring in the result in part and dissenting in part).
Insofar as the Court affirms the dismissal of the claims against Dr. Pope, I concur in the result. Otherwise, I respectfully dissent.
"[A] Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993). It appears to me that David Marks may be able to prove a set of circumstances that would entitle him to relief against Dr. Thomas Tenbrunsel and Alabama Psychological Services Center, LLC. According to the complaint, Marks voluntarily contacted Alabama Psychological Services to obtain psychological treatment, and when Marks met with Dr. Tenbrunsel, Dr. Tenbrunsel assured him that anything Marks disclosed during their meeting would remain confidential. Section 34-26-2 provides that "the confidential relations and communications between licensed psychologists . . . and their clients are placed upon the same basis as those provided by law between attorney and client," thereby acknowledging a psychologist-client privilege. The complaint alleges that Marks, relying on Dr. Tenbrunsel's promise of confidentiality, admitted two incidents of child abuse. Alabama law did not require Dr. Tenbrunsel to report the admitted incidents to any authority. Section 26-14-3, Ala.Code 1975, the mandatory-reporting statute, is not applicable.
The Court predicates Dr. Tenbrunsel's immunity and, consequently, the immunity of Alabama Psychological Services on what it considers it to be the combined effect of § 26-14-4 and § 26-14-9. Section 26-14-4, the permissive-reporting statute, simply provides that "any person may make such *1269 a report [of child abuse] if such person has reasonable cause to suspect that a child is being abused or neglected." Section 26-14-9 provides that a person "participating in the making of a good faith report" of child abuse shall be immune from civil liability. I am not persuaded that a psychologist who receives confidential information from a patient, after assuring the patient that any information shared by the patient would be confidential, acts in good faith as a matter of law, when the psychologist voluntarily chooses to ignore the assurances, and his patient's reliance upon them, and reports the confidential information to authorities.
PARKER, Justice (dissenting).
Because I believe that this case raises issues that merit reversing the dismissal and remanding the case for further proceedings, I respectfully dissent.

I.
The trial court, granting the motion to dismiss filed by Dr. Thomas W. Tenbrunsel, Dr. Lois H. Pope, and Alabama Psychological Services Center, LLC, seems to have assumed that the psychotherapist-patient privilege is merely a statutory creation and therefore subject to whatever encroachments, limits, or modifications the Legislature may choose to impose. But good reasons exist to conclude that the privilege is more than statutory. Alabama Code 1975, § 34-26-2, provides:
"For the purpose of this chapter, the confidential relations and communications between licensed psychologists, licensed psychiatrists, or licensed psychological technicians and their clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed."
Psychotherapy as an organized professional discipline dates back to the 1800s. The psychotherapist-patient privilege therefore does not have the common-law background of the attorney-client privilege, but it nevertheless enjoys a high status in our legal system. In Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the United States Supreme Court recognized the importance of the psychotherapist-patient privilege and some of its similarities with other privileges:
"Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is `rooted in the imperative need for confidence and trust.' [Trammel v. United States, 445 U.S. 40, 51 (1980).] Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment. As the Judicial Conference Advisory Committee observed in 1972 when it recommended that Congress recognize a psychotherapist privilege as part of the Proposed Federal Rules of Evidence, a psychiatrist's ability to help her patients "`is completely dependent *1270 upon [the patients'] willingness and ability to talk freely. This makes it difficult if not impossible for [a psychiatrist] to function without being able to assure . . . patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule . . ., there is wide agreement that confidentiality is a sine qua non for successful psychiatric treatment."'"
518 U.S. at 10, 116 S.Ct. 1923 (footnote omitted).
Section 34-26-2 mandates that the psychotherapist-patient privilege be "placed upon the same basis" as the attorney-client privilege. A brief analysis of the attorney-client privilege is therefore necessary to evaluate the status of the psychotherapist-patient privilege.
The attorney-client privilege has been described as "perhaps the most sacred of all legally recognized privileges." 81 Am.Jur.2d Witnesses § 327 (2004), citing United States v. Bauer, 132 F.3d 504 (9th Cir.1997). That treatise further states:
"The constitutional foundation for the attorney-client privilege is found in the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to counsel, and the Due Process Clause of the Fourteenth Amendment; these rights can be protected only if there is candor and free and open discussion between client and counsel."
81 Am.Jur.2d Witnesses § 328; see In re Recall of Lakewood City Council Members, 144 Wash.2d 583, 30 P.3d 474 (2001). See, also, Lieutenant Colonel Norman K. Thompson, USAF, and Captain Joshua E. Kastenberg, USAF, The Attorney-Client Privilege: Practical Military Applications of a Professional Core Value, 49 A.F.L.Rev. 1, 34-38 (2000). Thompson and Kastenberg observe that the attorney-client privilege is also based upon English common law at least as early as the reign of Elizabeth I in the 1500s and possibly earlier. Id. at 3.
Alabama Code 1975, § 1-3-1, provides:
"The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature."
The attorney-client privilege rests upon firm common-law, statutory, and even constitutional foundations, and § 34-26-2 places the psychotherapist-patient privilege "upon the same basis" as the attorney-client privilege. If the psychotherapist-patient privilege and the attorney-client privilege are "upon the same basis," and if the Legislature is free to encroach upon the psychotherapist-patient privilege whenever and however it sees fit as the main opinion seems to say, then the Legislature is free to encroach upon the attorney-client privilege as well. Such an encroachment could have a devastating impact on the judicial system.
The attorney-client privilege rests upon the premise that an attorney cannot properly defend a client, and thus the judicial system cannot effectively do justice, unless the client knows that he or she is fully free to disclose to an attorney the details of his or her case in strict confidentiality. In much the same way, psychotherapy rests upon the assurance of confidentiality. The patient discloses to the psychotherapist the most intimate details of his or her life, the most private actions, and the innermost thoughts. The patient discloses to the psychotherapist matters that the patient might not disclose even to an attorney, a clergyman, or a spouse. Without such disclosure psychotherapy cannot function successfully, and without the assurance of *1271 confidentiality such disclosure will be greatly impeded.
I am hesitant to recognize a right to privacy that is nowhere mentioned in the United States Constitution, and I am reluctant to identify within that so-called right to privacy all sorts of "rights" that may be no more than a judge's preferences as to what social policy should be. But the courts have been recognizing a right to privacy since at least 1965, when the United States Supreme Court decided Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and a patient's right to enter into a privileged confidential relationship with a psychotherapist seems at least as central to the concept of privacy as many other "rights" the courts have recognized and protected under this rubric.
If the psychotherapist-patient privilege is protected under the privacy guarantees of the United States Constitution, then courts should consider what level of protection this right is to be accorded and in what situations a state's interest is of sufficient magnitude to justify infringing upon this right.

II.
Dr. Tenbrunsel and the other defendants argue that this Court should not consider Marks's claim that the psychotherapist-patient privilege has a constitutional basis, because Marks failed to raise the constitutional issue in the circuit court and because he failed to notify the Attorney General that he was raising a constitutional challenge to a statute. (Tenbrunsel's brief, pp. 26-27.) Marks responds that "since testimonial privileges are rooted in common law and are authorized in the 14th Amendment, I asserted the Fifth Amendment every time I used the word Privilege." (Marks's reply brief, p. 20.) He also argues:
"That the Attorney General was not notified of the constitutional issues by a pro se appellant unfamiliar with the intricacies of court processes is surely an excusable error. While I have not researched the issue, I feel confident this Court makes accommodations for unintended procedural errors by pro se litigants. I now ask the Court for such accommodations if available and the opportunity to address any error which may prejudice my case."
(Marks's reply brief, p. 21.)
I am mindful of the dangers of relaxing procedural rules too much for pro se litigants. Doing so can increase the work-load of this Court and of parties opposing a pro se litigant and may even encourage a litigant to decide to proceed pro se when an attorney is really needed. Nevertheless, this Court has followed a rule of liberal construction when dealing with the pleadings of pro se litigants. Reversing the judgment of the Court of Criminal Appeals in Ex parte Deramus, 882 So.2d 875, 877 (Ala.2002), this Court unanimously held that "[t]he Court of Criminal Appeals has generally construed petitions from inmates acting pro se liberally, and has generally treated a mislabeled petition for a writ of habeas corpus when the relief requested could be sought only by a petition for a writ of habeas corpus."
Nor is this rule of liberal construction limited to criminal cases. The Committee Comments on the 1973 Adoption of the Alabama Rules of Civil Procedure declare: "It has been said that the policy of rules such as these is to disregard technicality and form in order that the civil rights of litigants may be asserted and tried on the merits." And in Brandon v. Humana Hospital-Huntsville, 598 So.2d 950, 951 (Ala.Civ.App.1992), the Court of Civil Appeals applied the rule even to litigants represented by counsel: "The Rules of *1272 Civil Procedure are to be construed liberally to effect the purpose of the rules, and, under the rule of liberal construction, every reasonable intendment and presumption must be made in favor of the pleader."
In his brief to this Court (see pp. xii, 19-23, 24-26), Marks has clearly set forth an argument that "Alabama's Psychotherapist-Patient Privilege Provisions Also Have Their Roots in the U.S. and Alabama Constitutions." In his pleadings in the circuit court he clearly stated his argument that the reporting requirements of § 26-14-3 and § 26-14-4 violate the psychotherapist-patient privilege, and he clearly argued the importance of that privilege, even if he failed to allege clearly that the privilege rests on a constitutional foundation.
I believe this Court should reverse the trial court's judgment of dismissal and remand the case to the circuit court where the issue whether and, if so, to what extent the psychotherapist-patient privilege has a constitutional foundation can be litigated. The defendants and the Attorney General will have full opportunity to argue their positions on the constitutionality of the privilege. No party will have been damaged by this pro se litigant's failure to clearly allege at trial a constitutional basis for the privilege or to notify the Attorney General of his constitutional arguments.

III.
The trial court also should be given the opportunity to examine whether Dr. Tenbrunsel's reporting of the information Marks disclosed was mandatory or permissive. Alabama Code 1975, § 26-14-3, titled "Mandatory reporting," mandates reporting by "mental health professionals. . . or any other person called upon to render aid or medical assistance to any child, when the child is known or suspected to be a victim of child abuse or neglect. . . ." Section 26-14-4, titled "Permissive reporting," provides: "In addition to those persons, firms, corporations and officials required by Section 26-14-3 to report child abuse and neglect, any person may make such a report if such person has reasonable cause to suspect that a child is being abused or neglected."
Dr. Tenbrunsel had a psychotherapist-patient relationship with Marks. He had never been "called upon to render aid or medical assistance" to either of the children who were the subjects of the abuse. His duty to report, if any, would therefore fall under § 26-14-4, "Permissive reporting," rather than § 26-14-3, "Mandatory reporting."
Although the immunity conferred by § 26-14-9 applies to "any person" making a report "under this chapter," and "this chapter" includes both the mandatory reporting statute, § 26-14-3, and the permissive reporting statute, § 26-14-4, the difference between mandatory reporting and permissive reporting may be significant. The immunity provision of § 26-14-9 contains an important limitation: it grants immunity only for "the making of a good faith report." The term "good faith" was added to § 26-14-9 by a 1998 amendment, and this Court has never construed the phrase "good faith" in the context of this statute. Cases that describe the immunity granted by this statute as "absolute" predate the 1998 "good faith" amendment; see Evans v. Waddell, 689 So.2d 23 (Ala.1997). The most obvious example of bad-faith reporting might be an instance in which one knowingly files a false report of suspected child abuse for the purpose of harassing someone. But a court might reasonably conclude that a psychotherapist's promising a patient absolute confidentiality and then breaking that promise by making a child-abuse report in which *1273 the patient is named as the abuser constitutes bad faith. A court might also reasonably conclude that promising absolute confidentiality and then making a mandatory suspected-child-abuse report does not constitute bad faith, but that promising absolute confidentiality and then making a permissive suspected-child-abuse report does constitute bad faith.

IV.
This leads to another issue the trial court should have the opportunity to consider on remand: Whether Dr. Tenbrunsel promised Marks absolute confidentiality, and, if so, whether the making of that promise coupled with the subsequent disclosure of information Marks thought would be confidential constituted actionable malpractice?
Marks claims Dr. Tenbrunsel promised that Marks's communications to him during therapy would be absolutely privileged. Marks claims to be well versed on child-abuse issues and on procedures used in psychotherapy, and he claims that he asked Dr. Tenbrunsel about the confidentiality of information Marks would disclose during their sessions and that he was promised absolute confidentiality. He further asserts that he would never have disclosed the child abuse if Dr. Tenbrunsel had promised anything less than absolute confidentiality. Dr. Tenbrunsel acknowledges that a conversation about confidentiality took place, but he denies that he promised Marks absolute confidentiality. At the very least, Marks has presented a set of facts on which he could prevail, making the dismissal inappropriate.
If Dr. Tenbrunsel promised absolute confidentiality, Marks may have a claim for malpractice. The malpractice could be (1) Dr. Tenbrunsel's making a promise of confidentiality that he knew or should have known he might not be able to keep; or (2) Dr. Tenbrunsel's having made a promise of confidentiality, subsequently breaking that promise; or (3) both. Breaking a promise of confidentiality is especially likely to constitute malpractice if the reporting was permissive under § 26-14-4 rather than mandatory under § 26-14-3.
Dr. Tenbrunsel and the other defendants cite Hall v. Van's Photo, Inc., 595 So.2d 1368 (Ala.1992), as authority for the proposition that a breach of a promise of confidentiality is justified in cases involving the abuse of a child. In that case, Hall brought film of her nude three-year-old child to Van's Photo Shop and allegedly received a promise of confidentiality from the photo shop before she allowed it to develop the film. The photo shop developed the film, suspected child abuse, and forwarded the film to the FBI. This Court held that there was reasonable cause to suspect child abuse and to make the report, despite any promises of confidentiality.
Hall presents a far different situation from the case at hand. Unlike the psychotherapist-patient privilege, no photographer-customer privilege exists or has ever existed under the law of this or any other jurisdiction. Furthermore, psychotherapy is a counseling profession in a way that photographic development is not. One could therefore reasonably expect confidentiality with a psychotherapist that one could not expect from a photo shop.
The public interest in discovering and preventing child abuse and the individual's interest in protecting the confidentiality of privileged communications are both of vital importance. In a case like this, they may conflict. I believe the Court should reverse the trial court's judgment finding Dr. Tenbrunsel and Dr. Pope immune and remand the case for trial, not only to do justice for the persons involved, but also to reconcile these competing interests.

*1274 V.
I also cannot agree with the main opinion that Marks's claim against Dr. Pope and Alabama Psychological Services should have been dismissed. The very point on which Marks predicates liability on the part of Dr. Tenbrunsel also implies potential liability on the part of Dr. Pope and Alabama Psychological Services. According to Marks, after Marks disclosed his actions involving the two children to Dr. Tenbrunsel, the doctor consulted with Dr. Pope and then decided to file a child-abuse report. If Dr. Pope advised Dr. Tenbrunsel to report the abuse, she and Alabama Psychological Services might be subject to the same malpractice liability as is Dr. Tenbrunsel for reporting the child abuse. Again, Marks has presented facts upon which he could prevail at trial, making a dismissal inappropriate. I would not dismiss the claims against Dr. Pope and Alabama Psychological Services, at least until Marks has had the opportunity to conduct discovery and to determine what advice Dr. Pope gave Dr. Tenbrunsel.
For the above reasons, I would reverse the trial court's judgment and remand the case with instructions to the trial court to determine as issues of fact and law: (1) whether Dr. Tenbrunsel promised Marks absolute confidentiality; (2) if so, whether Dr. Tenbrunsel's breach of that promise is actionable; (3) whether Dr. Pope advised Dr. Tenbrunsel to make the child-abuse report; and, (4) if so, whether that advice constituted fraud and/or malpractice. Therefore, I must dissent.
NOTES
[1] Section 26-14-2, entitled "Purpose of chapter," provides as follows:

"In order to protect children whose health and welfare may be adversely affected through abuse and neglect, the legislature hereby provides for the reporting of such cases to the appropriate authorities. It is the intent of the legislature that, as a result of such efforts, and through the cooperation of state, county, local agencies and divisions of government, protective services shall be made available in an effort to prevent further abuses and neglect, to safeguard and enforce the general welfare of such children, and to encourage cooperation among the states in dealing with the problems of child abuse."
[2] The question whether a person who makes a report of suspected child abuse pursuant to § 26-14-4 without reasonable cause to suspect that a child is being abused or neglected ever acts in good faith is not now before us.
[3] It is not necessary to decide in this case whether only a confession to child abuse supports a finding of "reasonable cause to suspect that a child is being abused or neglected" under § 26-14-4.
[4] We noted in Blue Cross & Blue Shield, supra, that "`"the policy against implied repeals has peculiar and special force when the conflicting provisions, which are thought to work a repeal, are contained in a special or specific act and a later general or broad act."'" (quoting Connor v. State in re Boutwell, 275 Ala. 230, 234, 153 So.2d 787, 791 (1963), quoting in turn 50 Am. Jur Statutes § 561).
[5] Justice See's dissenting opinion would eliminate the repugnancy here by introducing a judicial exception to the sweep of the later act.
[6] Section 34-26-2, Ala.Code 1975, provides:

"For the purpose of this chapter, the confidential relations and communications between licensed psychologists, licensed psychiatrists, or licensed psychological technicians and their clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed."
[7] On January 1, 1996, this Court adopted Rule 503(b), Ala. R. Evid., which states:

"(b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family."
[8] The mothers of the two girls told Marks that they would not pursue criminal charges against him provided he complete a sex-offender treatment program.
[9] Section 26-14-9 provides:

"Any person, firm, corporation, or official, including members of a multidisciplinary child protection team, quality assurance team, child death review team, or other authorized case review team or panel, by whatever designation, participating in the making of a good faith report in an investigation or case review authorized under this chapter or other law or department practice or in the removal of a child pursuant to this chapter, or participating in a judicial proceeding resulting therefrom, shall, in so doing, be immune from any liability, civil or criminal, that might otherwise be incurred or imposed."
[10] See Ex parte Rudder, 507 So.2d 411, 416 (Ala.1987). The purpose of the attorney-client privilege, upon which the psychotherapist-patient privilege is modeled, is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of the law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)(holding that communications by corporate employees to counsel made in order to secure advice were protected); see also Jay v. Sears Roebuck & Co., 340 So.2d 456 (Ala.Civ.App.1976).
[11] But see Rudder, 507 So.2d at 417 ("[The] psychiatrist-patient privilege may not in all cases be an impenetrable shield."); see also Harbin v. Harbin, 495 So.2d 72 (Ala.1986)(recognizing an exception to the privilege in child-custody cases where the mental state of one of the parents is at issue); Free v. State, 455 So.2d 137 (Ala.Crim.App.1984)(stating that the privilege is unavailable where a criminal defendant raises an insanity defense).
[12] The impact of the immunity statute on the attorney-client privilege, which is the model upon which the psychotherapist-patient privilege is based, is not before us; however, the implications are obvious.